JOHN WHIPPLE *et ux. et al. vs.* FERDINAND C. LATROBE *et al.*

NEWPORT—MAY 2, 1898.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

A. executed a deed of trust which operated a division of his estate, taking effect at his death. Under this his three children took three-fifths of the estate, two grandchildren took a fifth, and B., another grandchild, took the remaining fifth. The shares of the grandchildren were subject to the deduction of a sum which was to be added to the childrens' shares; the amount of this deduction was afterwards ascertained, and B. paid over his proportional part thereof;

subsequently he died without issue, and intestate as to certain of the property received from his grandfather. The children claimed that the title to this property came to them as ancestral estate ; the father of B. claimed that his son acquired the property as a purchaser for a valuable consideration, and that the title came to him as his sole heir at law:—

*Held*, that the deed of trust was a purely voluntary act on the part of the grand-father, and the subtraction of a part from the two-fifths given the grandchild-ren and the addition thereof to the three-fifths given the children was merely a mode for determining the interests to be taken by the recipients of his bounty.

*Held*, further, that B. took his undivided fifth part by gift from his grandfather, and that the title passed to the children as ancestral estate.

BILL IN EQUITY for partition. Heard on question of the title of the respective parties.

MATTESON, C. J. This is a bill for partition. On April 3, 1878, Thomas Swann, of Baltimore, Md., being then the owner of a parcel óf land of which partition is sought, exe-cuted a declaration of trust by which he declared that he held his real and personal estate, with the exception of two pieces of property therein specified, in trust for his children and grandchildren, subject to a life estate in himself therein, as follows : "In trust as to one-fifth part thereof for my daughter Jane Byrd Ferguson, in trust as to one-fifth part thereof for my daughter Elizabeth Gilmor Whipple, in trust as to one-fifth part thereof for my daughter Mary Mercer Carter . . . . in trust for one-fifth part of my said estate for my grandson Thomas Swann Latrobe, the only child of my daughter Louisa Sherlock Latrobe, deceased, and in trust for one-fifth part of my said estate for my grandsons Thomas Swann and Sherlock Swann, the sons of my son Thomas Swann, deceased, . there being deducted from the said one-fifth parts of my said estate, hereby declared to be held in trust for my grandchildren Thomas Swann Latrobe, Thomas Swann and Sherlock Swann, an amount equal in value to the property situated in the city of Baltimore and known as numbers twelve and fourteen Cathedral Street and number sixty-six Franklin Street, which amount is to be added to and equally divided between the one-fifth parts held in trust by me for my daughters Jane Byrd Ferguson, Elizabeth Gilmor Whipple and Mary Mercer Carter respectively, as

aforesaid." Subsequently he distributed among his children and grandchildren the greater part of the personal property which he held in trust for them under said instrument, according to their several interests as therein defined. After his death, on July 23, 1883, suit was brought by the three daughters named, and their husbands, in the Circuit Court of Baltimore, against the said Thomas Swann Latrobe and others, in respect to the estates passing to and taken by them respectively under said instrument of April 3, 1878, in which it was ascertained that the value of the property known as numbers twelve and fourteen Cathedral street and number sixty-six Franklin street was $25,000, and that the half interest of Thomas Swann Latrobe therein was $12,500; and under decree of the court in said suit Thomas Swann Latrobe was compelled to pay, and did pay, the following sums, to wit, to Elizabeth Gilmor Whipple, $3,077.90; to Mary Mercer Carter, $3,077.90; to Jane Byrd Ferguson, $3,077.90; these sums in each case being made up of $2,500, one-fifth of one-half of the value ($25,000) of the properties (old numbers) twelve and fourteen Cathedral street and sixty-six Franklin street in Baltimore, and $577.90 as interest. Thomas Swann Latrobe died May 13, 1894, and, so far as the land of which partition is sought is concerned, intestate, leaving surviving him his father, the respondent Ferdinand C. Latrobe.

The question before us is, who succeeded to the title of the undivided fifth part of the parcel of land described in the bill, of which the said Thomas Swann Latrobe died seized. The complainants claim that it passed to said Thomas Swann Latrobe, under the instrument of April 3, 1878, as a gift, and that it descended to them and the respondents other than Ferdinand C. Latrobe as ancestral estate, in accordance with Gen. Laws R. I. cap. 216, § 6, which provides that "when the title to any real estate of inheritance, as to which the person having such title shall die intestate, came by descent, gift or devise, from the parent or other kindred of the intestate, and such intestate die without children, such estate shall go to the kin next to the intestate, of the blood of the person from whom such estate came or descended, if any

there be." The respondent Latrobe, on the other hand, claims that Thomas Swann Latrobe acquired the estate as a purchaser for a valuable consideration, and that the estate descended to him as his father and only heir at law.

Conceding the contentions on behalf of the respondent Latrobe that Gen. Laws R. I. cap. 216, § 6, forms an exception to the general law of descent, and as such is to be construed strictly, since the general heir ought not to be disinherited upon any forced or loose construction, and that to bring an estate within the exception it must have been acquired as a pure gift and not one the consideration for which was partly valuable and partly good, we do not think that the instrument of April 3, 1878, is to be construed as negativing a gift, as is still further contended in behalf of the respondent Latrobe. The argument upon which this last contention is based rests on the claim that the instrument requires the grandsons, in order to share its benefits, to pay to the other beneficiaries a stipulated amount from their own independent estates, to wit, "an amount equal in value" to their estates on Cathedral and Franklin streets in Baltimore. It is argued that, though in terms the instrument directs this amount to be "deducted from the one-fifth parts of my estates hereby declared to be held in trust for my grandchildren," yet, inasmuch as it did not form any part of the grandfather's estate, it could not be deducted until it had been paid in and added to his estate; and as, moreover, it was to be added, not to the estate generally, but was to be "added to and equally divided between the one-fifth parts held in trust for my daughters," it in effect expressly required the grandsons to pay the amount to their aunts to entitle them to share in their grandfather's estate. It is to be borne in mind, however, that this instrument purports to be a purely voluntary act on the part of the grandfather. On the face of it, and so far as appears, he was providing for the disposition of his estate, retaining merely the use of it for his life, among his children and grandchildren. Being his own estate, he had the right to dispose of it as he thought fit, giving such shares to his children as seemed to him proper, and to his

grandsons such shares as seemed to him proper. He accordingly divides the estate into fifths as a measure of value, and gives to each of his daughters one-fifth, to two of his grandsons one-fifth, and to his other grandson one-fifth, and then for some reason, which is not apparent and which does not appear, but which, in view of the fact that he had the right to dispose of the estate as he chose, is immaterial, provides that there shall be deducted from the one-fifth parts so set apart for the grandsons an amount equal in value to their Cathedral and Franklin street estates, and that that amount shall be added to the one-fifth shares of the daughters. The instrument contains no language which looks towards a purchase by the grandsons of the share of the estate which they were to take, or towards the payment by them of the value of the estates referred to out of their separate estates, as a condition for sharing in the bounty of their grandfather. On the contrary, the language is that there shall be deducted from the one-fifth parts declared to be held in trust for them the amount specified, *i. e.*, that after the estate has been divided into fifths there shall be taken from the two-fifths given to the grandsons a specified amount, which is to be added to the shares of the daughters. The division of the estate into fifths and the diminution of the shares of the grandsons, thus ascertained, by the amount stated, and the addition thereof to the shares of the daughters, was merely a mode adopted by the maker of the instrument for determining the interests to be taken by the recipients of his bounty.

The grounds on which the decree of the Circuit Court of Baltimore required the payment by Thomas Swann Latrobe of $3,077.90 each to Elizabeth G. Whipple, Mary Mercer Carter, and John Byrd Ferguson do not appear. Presumably, in the distribution of the personal estate which passed under the instrument of April 3, 1878, made by Thomas Swann during his life, Thomas Swann Latrobe had received more than his share of the estate under the instrument by that amount, and that the purpose of the decree was to require him to pay to the parties in whose favor the decree was

made, the excess. This view is strengthened by the consideration that, though the value of Thomas Swann Latrobe's one-half of the Cathedral and Franklin street estates was ascertained to be $12,500, the decree required only the payment of $7,500, and interest thereon, to his aunts, though by the terms of the instrument of April 3, 1878, an amount equal to the value of his half of the estates referred to was to be taken from his one-fifth and added to the other shares.

We decide that Thomas Swann Latrobe took the undivided fifth of the land of which partition is sought, by gift from his grandfather, and that it descended as ancestral estate to the complainants and respondents other than Ferdinand C. Latrobe.

*Darius Baker*, for complainants.
*James Tillinghast and Frank Gosnell*, for respondents.